[Cite as *Credit Invests., Inc. v. Obanion*, 2014-Ohio-5799.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CREDIT INVESTMENTS, INC. | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26129 |
| | : | |
| v. | : | Trial Court Case No. 12-CVF-7394 |
| | : | |
| KATHY OBANION | : | (Civil Appeal from |
| | : | Dayton Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of December, 2014.

. . . . . . . . . .

YALE R. LEVY, Atty. Reg. #0065006, and KRISHNA K. VELAYUDHAN, Atty. Reg. #0074606, Levy & Associates, LLC, 4645 Executive Drive, Columbus, Ohio 43220
      Attorneys for Plaintiff-Appellee

ANDREA M. SEIELSTAD, University of Dayton Law Clinic, 300 College Park, Dayton, Ohio 45469-2750
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Kathy Obanion appeals from the trial court's entry of summary judgment against her on appellee Credit Investments, Inc.'s complaint seeking a judgment on a fitness-center account.

**{¶ 2}** Obanion advances five assignments of error challenging the entry of summary judgment. First, she contends Credit Investments failed to prove that it possessed a valid assignment of the debt at issue, that it had notified her of the debt, and that it was entitled to sue to collect the debt. Second, she claims Credit Investments' only evidentiary support was an affidavit that failed to establish the affiant's personal knowledge. Third, she asserts that Credit Investments failed to meet its burden of proving unjust enrichment. Fourth, she argues that Credit Investments did not address any of her affirmative defenses. Fifth, she maintains that genuine issues of material fact exist with regard to certain affirmative defenses.

**{¶ 3}** The record reflects that Credit Investments filed its complaint in December 2012. The complaint alleged that Credit Investments was the assignee of Obanion's fitness-center account with Premier Athletic Center of Ohio. It further alleged that Obanion had breached the account by non-payment, that payment had been demanded, and that she owed $2,670.24 on the account. Finally, the complaint alleged that Obanion had been unjustly enriched in the foregoing amount. Accompanying the complaint was an affidavit by Russell Dampier, the president of Credit Investments. Following Dampier's affidavit was an apparent credit/membership application completed by Obanion and a membership agreement between Premier Athletic Center and Obanion. The agreement obligated her to make thirty-six monthly payments of $33.22 beginning on October 15, 2001. The agreement bore the signature of a Kathy Obanion and was dated September 7, 2001.

**{¶ 4}** Obanion answered the complaint and asserted affirmative defenses, including unconscionability, unenforceability, rescission, laches, waiver, and estoppel. She also asserted

counterclaims for negligent misrepresentation, violations of the Ohio Consumer Sales Practices Act, and rescission.

{¶ 5} Credit Investments moved for summary judgment in August 2013.Supporting its motion was the Dampier affidavit mentioned above. Accompanying the affidavit were the credit/membership application and membership agreement, along with an apparent account ledger sheet showing a balance on Obanion's account of $2,670.24. Also included was a document that purported to be a log of collection calls made to Obanion.

{¶ 6} In September 2013, Obanion filed a memorandum opposing summary judgment. She argued generally that Credit Investments had not met its burden of proof. Obanion additionally maintained that summary judgment was improper because (1) a genuine issue of material fact existed as to unjust enrichment, (2) the copy of the membership agreement attached to Credit Investments' motion was blurry and illegible and (3) Credit Investments' motion did not address her affirmative defenses or counterclaims. In October 2013, Obanion filed an amended memorandum. She repeated her earlier arguments and specifically addressed the affirmative defenses of laches and unconscionability.[1]

{¶ 7} On February 10, 2014, the trial court entered summary judgment in favor of Credit Investments. It found Credit Investments entitled to $2,670.24 plus interest and costs. Although the trial court's ruling did not address Obanion's counterclaims, it included no-just-reason-for-delay certification pursuant to Civ.R. 54(B). This appeal followed.

{¶ 8} In her first assignment of error, Obanion contends Credit Investments was not entitled to summary judgment because it failed to prove that it possessed a valid assignment of the

---

[1] Although Obanion has not raised the readability of the membership agreement as an issue on appeal, we note that we have had no trouble reading any of its terms.

debt at issue, that it had notified her of the debt, and that it was entitled to sue to collect the debt. In support, Obanion's appellate brief challenges the existence of a valid assignment and alleges Credit Investments' non-compliance with R.C. 1309.37(C) and R.C. 1319.12(C).

{¶ 9} With regard to the existence of a valid assignment, we find Obanion's argument unpersuasive. The Dampier affidavit referenced above stated in relevant part that he was familiar with Credit Investments' books and records, that Obanion's attached account was correct within his knowledge, that the account had been "sold and delivered to the defendant,"[2] and that the amount due on the account was $900 in principal and $1,770.24 in interest. A copy of Obanion's signed membership agreement with Premier Athletic Center accompanied the affidavit. The bottom left-hand corner of the last page of the membership agreement reflected a September 12, 2001 assignment from Premier Athletic Center to Credit Investments "for value received."

{¶ 10} On appeal, Obanion challenges the adequacy of Dampier's affidavit and the supporting documents. We note, however, that she raised no such challenge in opposition to summary judgment below. The closest she came to challenging the existence of an assignment was a non-specific assertion that Dampier's affidavit, "even if true, does not prove that there is no genuine issue of material fact on the entirety of the record." (Doc. #17, Memorandum at pg. 3). Obanion's memorandum opposing summary judgment said nothing at all about the existence of an assignment. Absent any challenge or evidence below raising that issue, we believe Dampier's affidavit and the accompanying membership agreement were at least minimally sufficient to establish the fact of an assignment of Obanion's account and corresponding debt from Premier

---

[2] The reference to the account being sold and delivered to the defendant, rather than the plaintiff, appears to be a clear typographical error.

Athletic Center to Credit Investments.[3]

{¶ 11} As set forth above, Obanion's first assignment of error also alleges Credit Investments' non-compliance with R.C. 1309.37(C). We note, however, that *now-former* R.C. 1309.37 was repealed in July 2001. Another provision, R.C. 1309.406, is roughly analogous to the repealed statute. It provides in part:

> (A) * * * [A]n account debtor on an account * * * may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

R.C. 1309.406(A).

{¶ 12} Obanion argues that the foregoing language precluded Credit Investments' suit because it never gave her notice of the assignment of her account. We find this argument unpersuasive for at least two reasons. First, she did not raise non-compliance with former R.C. 1309.37(C)---or more appropriately with current R.C. 1309.406(A)---in opposition to summary judgment below. We need not consider the issue for the first time on appeal. Second, we do not read the statute as precluding a lawsuit by an assignee to collect an unpaid debt. The statute simply provides that a debtor may continue to make scheduled payments to the original creditor until

---

[3]In her reply brief, Obanion complains about Credit Investments mentioning the assignment language in the membership agreement for the first time on appeal. But Credit Investments' failure to mention the language earlier may be attributed to Obanion's failure to challenge the validity of the assignment below. In any event, the fact remains that Dampier's summary judgment affidavit alleged the sale of Obanion's account and referenced the attached membership agreement that contained the language assigning the account to Credit Investments.

receiving notice of an assignment. Here, however, Obanion did not pay anyone. If her claim about a lack of notice of the assignment is true, she may have been justified in continuing to pay Premier Athletic Center. Given her failure to do so, however, she now is required to pay Credit Investments, the assignee. If nothing else, the complaint in this case put her on notice of that fact.

{¶ 13} Obanion's first assignment of error also alleges non-compliance with R.C. 1319.12(C), which provides:

(C) No collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness unless it has taken the assignment in accordance with all of the following requirements:

(1) The assignment was voluntary, properly executed, and acknowledged by the person transferring title to the collection agency.

(2) The collection agency did not require the assignment as a condition to listing the account, bill, or other evidence of indebtedness with the collection agency for collection.

(3) The assignment was manifested by a written agreement separate from and in addition to any document intended for the purpose of listing the account, bill, or other evidence of indebtedness with the collection agency. The written agreement shall state the effective date of the assignment and the consideration paid or given, if any, for the assignment and shall expressly authorize the collection agency to refer the assigned account, bill, or other evidence of indebtedness to an attorney admitted to the practice of law in this state for the commencement of litigation. The written agreement also shall disclose that the collection agency may consolidate, for purposes of filing an action, the assigned account, bill, or other evidence of

indebtedness with those of other creditors against an individual debtor or co-debtors.

(4) Upon the effective date of the assignment to the collection agency, the creditor's account maintained by the collection agency in connection with the assigned account, bill, or other evidence of indebtedness was canceled.

R.C. 1319.12(C).

**{¶ 14}** Although Obanion claims Credit Investments failed to comply with the foregoing requirements before commencing suit, she failed to raise non-compliance with R.C. 1319.12(C) in opposition to summary judgment below. More importantly, the statute's requirements did not apply to Credit Investments because on this record there is no genuine issue of fact that it was not acting as a "collection agency." The statute defines a collection agency as "any person who, for compensation, contingent or otherwise, for other valuable consideration, offers services to collect an alleged debt asserted to be owed to another." R.C. 1319.12(A)(1). Here Dampier's affidavit asserted that Obanion's debt to Premier Athletic Center had been *sold* and that Obanion owed Credit Investments the money. In light of the complaint and accompanying affidavit, the record does not reflect that Credit Investments had offered its services to collect a debt owed to Premier Athletic Center. Rather, the uncontroverted evidence establishes that Credit Investments was suing on its own behalf to collect a debt that it had purchased and that it owned. Under these circumstances, Credit Investments was not acting as a "collection agency" for purposes of R.C. 1319.12. *See Equable Ascent Financial v. Ybarra*, 9th Dist. Lorain Nos. 12CA010290, 12CA010296, 2013-Ohio-4283, ¶ 6 (recognizing that a purchaser of a debt who sues to collect the debt on its own behalf is not a collection agency under R.C. 1319.12). The fact that the complaint and affidavit contained language about an assignment of the debt does not require a contrary

conclusion. *Barcosh, Ltd. v. Dumas*, 6th Dist. Lucas No. L-10-1001, 2010-Ohio-3066, ¶ 19. Obanion's first assignment of error is overruled.

{¶ 15} In her second assignment of error, Obanion contends the trial court erred in entering summary judgment against her where Credit Investments' only evidentiary support was Dampier's affidavit, which she claims failed to establish his first-hand knowledge of the contents of the various account-related documents accompanying the affidavit. Once again, however, in opposition to summary judgment below, Obanion never raised a hearsay or authentication challenge to Dampier's affidavit or the accompanying documents. Absent such a challenge, she has waived her ability to raise those issues on appeal.[4] *See*, *e.g.*, *In re Contest of Election Held on Stark Cty. Issue 6*, 132 Ohio St.3d 98, 2012-Ohio-2091, 969 N.E.2d 1172, ¶ 20 fn. 2 ("Because the contestees did not specify any objection to the affidavits submitted by the contestors during the election-contest proceedings below, they waived any argument that the trial court's admission of this evidence was erroneous because it constituted hearsay[.]");*Citizens Banking Co. v. Parsons*, 10th Dist. Franklin No. 11AP-480, 2014-Ohio-2781, ¶ 17 ("Now, for the first time on appeal, appellants argue both that the affidavit of Welch does not comply with Civ.R. 56(E) and that the documents referenced by Welch's affidavit and attached to appellee's complaint constitute inadmissible hearsay. Because appellants failed to raise these issues in the trial court, they have waived these arguments on appeal."); *American Tax Funding v. Whitlow*, 2d Dist. Montgomery No. 23182, 2010-Ohio-3333, ¶ 13 fn. 3 (recognizing that an objection to the lack of authentication

---

[4] In her reply brief, Obanion asserts that a log of collection calls to her was attached to Credit Investments' appellee's brief but was not in the record below. We disagree. The log appears in the record below as the last document accompanying Dampier's summary judgment affidavit. (*See* Doc. #12, Dampier affidavit documents). Although he did not specifically refer to the log in his affidavit, Obanion raised no authentication objection below. In any event, our decision is independent of the log's inclusion in the record.

of summary judgment evidence is waived if not raised in the trial court). Accordingly, the second assignment of error is overruled.

{¶ 16} In her third assignment of error, Obanion claims the trial court erred in entering summary judgment against her where a genuine issue of material fact exists as to unjust enrichment. Obanion asserts that Dampier's affidavit did not address unjust enrichment. She also maintains that unjust enrichment did not exist because she never used Premier Athletic Center's facilities after joining. In support of this proposition, she cites her own answers to interrogatories, which are not part of the record before us.

{¶ 17} In any event, we find Obanion's third assignment of error unpersuasive for a more fundamental reason. Unjust enrichment is an equitable, quasi-contract doctrine. *Percio v. Smith*, 2d Dist. Clark No. 2013-CA-56, 2014-Ohio-1266, ¶ 25. It does not apply where an express agreement covers the services for which payment is sought. *Acquisition Servs., Inc. v. Zeller*, 2d Dist. Montgomery No. 25486, 2013-Ohio-3455, ¶ 33. Here Obanion's signed membership agreement set forth her financial obligation and defined the scope of Credit Investments' recovery as assignee. Although paragraph seven of Credit Investments' complaint did allege unjust enrichment, paragraphs two, three, and four plainly stated a claim for breach of contract. That claim was supported by Dampier's affidavit and the documents referenced above. Because Credit Investments was entitled to summary judgment based on a breach of contract, its alternative theory of recovery based on unjust enrichment is superfluous. The third assignment of error is overruled.

{¶ 18} In her fourth assignment of error, Obanion contends the trial court erred in entering summary judgment against her where Credit Investments' motion failed to address her affirmative defenses. She relies on this court's opinion in *ABN AMRO Mortgage Group v. Meyers*, 159 Ohio App.3d 608, 2005-Ohio-602, 824 N.E.2d 1041, ¶ 7 (2d Dist.), for the proposition that a summary

judgment plaintiff "bears the initial burden to demonstrate the absence of a genuine issue of material fact on its claim and on a nonmoving defendant's affirmative defenses." Here Credit Investments' summary judgment motion did not mention Obanion's affirmative defenses. Therefore, she claims the trial court erred in entering judgment against her.

{¶ 19} Upon review, we are unconvinced by Obanion's untimely reliance on *ABN AMRO*. In *Todd Dev. Corp., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, the Ohio Supreme Court explicitly rejected the rationale this court applied in *ABN AMRO*. The majority in *Todd* held that a plaintiff moving for summary judgment "does not bear the initial burden of addressing the nonmoving party's affirmative defenses." *Id.* at ¶ 24. Rather, a non-moving party has the burden to submit evidence as to its own affirmative defenses. Id. at ¶ 14-18. Obanion's fourth assignment of error is overruled on the authority of *Todd*, which is dispositive.

{¶ 20} In her fifth assignment of error, Obanion addresses two of her affirmative defenses and asserts that genuine issues of material fact exist with regard to them. In particular, she argues that factual issues regarding the applicability of laches and unconscionability precluded summary judgment.

{¶ 21} "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such a delay, (3) knowledge-actual or constructive-of the injury or wrong, and (4) prejudice to the other party." *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 45, citing *State ex rel. Cater v. N. Olmsted*, 69 Ohio St.3d 315, 325, 631 N.E.2d 1048 (1994).

{¶ 22} Obanion asserts that Credit Investments filed suit roughly eleven years after she entered into her membership agreement with Premier Athletic Center and eight years after the agreement expired. She insists that Credit Investments had no excuse for this unreasonable delay,

that it had actual knowledge of her debt, and that the delay prejudiced her because it resulted in her owing $1770.24 in interest plus $900 in principal on the account. Therefore, she contends laches was a viable affirmative defense.

**{¶ 23}** We disagree. In the context of laches, "'[t]he accumulation of interest and the absence of a timely demand for payment does not constitute material prejudice where the terms of the debt are set forth in the contract.'"*Gordon v. Reid*, 2d Dist. Montgomery No. 25507, 2013-Ohio-3649, ¶ 19 quoting *Thirty-Four Corp. v. Sixty-Seven Corp.*, 15 Ohio St.3d 350, 353, 474 N.E.2d 295 (1984). We find that to be the case here, where the terms of Obanion's debt, including her obligation to pay interest at a specified rate, were set forth in her membership agreement.

**{¶ 24}** We are equally unpersuaded that a genuine issue of material fact exists regarding unconscionability. To prevail on this affirmative defense, a party must establish that a contract is both substantively and procedurally unconscionable. *Moran v. Riverfront Diversified, Inc.*, 197 Ohio App.3d 471, 2011-Ohio-6328, 968 N.E.2d 1, ¶ 18 (2d Dist.); *Brownell v. VanWyk*, 2d Dist. Montgomery No. 24042, 2010-Ohio-6338, ¶ 21, 26. Substantive unconscionability concerns a contract's terms, whereas procedural unconscionability involves the circumstances surrounding the bargain. *Brownell* at ¶ 27-29.

**{¶ 25}** Obanion alleges that her membership agreement was substantively unconscionable because it had a three-year duration, carried a twenty-percent interest rate, and resulted in a membership fee of about $30 per month. According to Obanion, it is self-evident that these terms were unreasonable for a fitness-center membership a decade ago. With regard to procedural unconscionability, she argues:

Information exchanged between the parties in discovery and pointed out to the trial court in the summary judgment motions and memoranda reveal that Defendant-Appellant informed the gym representatives on multiple occasions prior to signing the agreement that she did not have a car and had no means to get to the gym on a regular basis, if at all, and that she could not afford the membership because she was making minimum wage and had many other monetary obligations. This alone could result in a trier of fact determining that it was unlikely from the inception of the alleged agreement that Defendant-Appellant would be able to pay under the contract or receive a benefit and that Premier Fitness new [sic] this, thereby rendering the agreement procedurally unconscionable. At a minimum, a dispute existed as to this material set of factual circumstances, and summary judgment should not have been granted.

(Appellant's brief at 15).

{¶ 26} Upon review, it is not apparent to us that the terms of Obanion's membership agreement were substantively unconscionable. In the proceedings below, she presented no evidence on that issue, relying instead on her opinion that the terms, on their face, were unreasonable. But even if we assume, arguendo, that a jury could find substantive unconscionability, the record reveals no genuine issue of material fact with regard to procedural unconscionability. In particular, the record contains *no evidence* supporting Obanion's factual assertions about having informed gym representatives when she joined that she had no car and could not afford the fees. She made these claims in a memorandum opposing summary judgment but provided no supporting evidence. (Doc. #17). On appeal, she appears to argue that her factual assertions were supported by her answers to interrogatories or other information exchanged in

discovery. (Appellant's brief at 15). Unfortunately, the record contains no answers to interrogatories or other evidence supporting her factual allegations about what occurred when she joined Premier Athletic Center. Because the record contains no evidence supporting the factual allegations underlying Obanion's procedural unconscionability claim, we see no genuine issue of material fact. Accordingly, the fifth assignment of error is overruled.

{¶ 27} The judgment of the Dayton Municipal Court, Civil Division, is affirmed. The cause is remanded, however, for disposition of Obanion's counterclaims, which remain pending below.

. . . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.


Copies mailed to:

Yale R. Levy
Krishna K. Velayudhan
Andrea M. M. Seielstad
Hon. Daniel G. Gehres